UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
MAUREEN NELSON; JOHANNA NELSON;
AND TAMARA NELSON,

        Plaintiffs,

        -against-

GALIL MANAGEMENT; PLAZA
APARTMENTS LLC; AND GFB
MANAGEMENT,

        Defendants.
------------------------------------X

**Not for Publication**

**MEMORANDUM & ORDER**

18-CV-144(KAM)(LB)

**MATSUMOTO, United States District Judge:**

        Maureen Nelson, Johanna Nelson, and Tamara Nelson ("plaintiffs") commenced this *pro se* civil action by filing a complaint (the "January Complaint," ECF No. 1) on January 3, 2018. Initially, only plaintiff Maureen Nelson submitted an application to proceed *in forma pauperis* ("IFP"). (*See* Motion for Leave to Proceed *In Forma Pauperis*, ECF No. 2.) By Memorandum and Order dated April 25, 2018 (the "April Order," ECF No. 4), the court granted Maureen Nelson's request to proceed IFP, dismissed the January Complaint, and granted leave to file an amended complaint.

        On May 18, 2018, a new complaint was filed by Tamara Nelson and Johanna Nelson (the "May Complaint," ECF No. 5), accompanied by signed IFP applications from Tamara Nelson and Johanna Nelson. (*See* Motions for Leave to Proceed *In Forma*

1

*Pauperis*, ECF Nos. 6-7.) The May Complaint named the same defendants and alleged the same claims as the January Complaint, but did not include Maureen Nelson as a plaintiff. Although the court directed that the May Complaint be filed as an amended complaint and advised plaintiffs that it would "completely replace the original complaint" (April Order at 5-6), the court will consider the January Complaint and the May Complaint in conjunction. On review, however, the court concludes that the May Complaint fails to cure the primary deficiency of the January Complaint. Consequently, this action is dismissed for the reasons set forth in this Memorandum and Order.

## DISCUSSION

The January Complaint alleged that defendants Galil Management, Plaza Apartments LLC, and GFB Management were negligent in failing to remediate mold conditions in the apartment in which plaintiffs lived, and that plaintiffs suffered health problems as a result. (January Complaint at 5-6.) Plaintiffs also alleged that a recliner was damaged by a water leak and that a soap dish fell on an unidentified person's foot. (*Id.* at 6.) In the section of the form complaint provided to identify a basis for the court's jurisdiction, plaintiffs stated: "Right to a habitable home (mold, leaks, rats & roaches)" and "Anti-discrimination (Harassment)." (*Id.* at 4.)

2

In the same section, plaintiffs checked a box indicating that plaintiffs asserted federal question jurisdiction, but left unchecked a box indicating that they asserted jurisdiction based on diversity of citizenship. (*Id.* at 4.) The January Complaint sought damages in an aggregate amount of $760,000: $750,000 for "emotional distress, worsening health problems . . . [a]nd a recliner that was ruined," and $10,000 for a "soap-dish falling on [a] foot." (*Id.* at 5-6; *see also* April Order at 2, 2 n.2 (discussing January Complaint's damages requests).)

The May Complaint largely repeats the allegations contained in the January Complaint and adds two additional details. Specifically, it asserts that defendants sent workers to paint over the mold two times in 2018 and "harassed us by sending eviction letters on almost a weekly basis for not 'giving them access to our apartment' to do repairs." (May Complaint at 5.) In addition to the $750,000 and $10,000 in damages previously requested as compensation for plaintiffs' illnesses, emotional distress, and the foot injury, respectively, the Supplemental Complaint seeks an additional $500 for the damaged recliner. (*Id.* at 6.)

In addition to the January and May Complaints, plaintiffs have submitted three sets of documents to the court. The first set of documents was received on June 6, 2018 and

3

includes a letter from Maureen Nelson that appears to be directed to a landlord or property manager and sets forth various problems with the physical condition of her apartment, as well as complaints about noise from a neighboring apartment. (*See* June 6, 2018 Documents, ECF No. 8, at 1-3.)[1] It also includes a similar letter from Tamara Nelson (*id.* at 10), medical records (*id.* at 4-9, 11-19), and printouts of internet pages discussing potential health issues arising from mold. (*Id.* at 20-21.)

The second set of documents was received on July 18, 2018, and includes an indoor air quality report prepared by Environmental Management Solutions of NY, Inc. (July 18, 2018 Documents, ECF No. 9, at 1-2), records of prescriptions filled for plaintiffs at a Brooklyn, New York pharmacy (*id.* at 3, 5-6), and a record of a New York City Department of Housing Preservation and Development inspection that does not state the address at which the inspection took place. (*Id.* at 4.) The second set of documents also includes a January 29, 2018 Decision and Order issued by the Honorable Daniele Chinea, Judge of the Civil Court of the City of New York, Kings County, Housing Court (*id.* at 7), and a June 25, 2018 letter from

---

[1] References to page numbers in citations to the three sets of documents plaintiffs have submitted are to the page numbers generated by the ECF system.

Maureen Nelson to "the Landlord and Management of Plaza Apartments" regarding the condition of plaintiffs' apartment, problems with neighbors, and purported harassment by the management company. (*Id.* at 8-9.)

The third set of documents was received on August 7, 2018, and contains a letter dated August 1, 2018 from Maureen Nelson to the "Landlord of Plaza Apartments" stating that she "received a ten day notice [of] termination letter," complaining of the manner in which a "Mr. David" "check[ed] the fire escape gate" in her apartment, and setting forth various problems with the apartment's physical condition. (August 7, 2018 Documents, ECF No. 10, at 1-2.) Additionally, the third set of documents contains partial medical records a hospital visit by each plaintiff in late July 2018. (*Id.* at 3-5.)

The May Complaint, even read together with the January Complaint and taking into account the documents plaintiffs have submitted, does not address the major deficiency in the January Complaint as set forth in the April Order: plaintiffs have not presented any basis for this court's jurisdiction.

As the court previously explained, a plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action, either by presenting a "federal question," or by asserting diversity

jurisdiction. Neither of these bases for federal subject matter jurisdiction can be satisfied solely because a plaintiff alleges substantial or significant harm. Instead, as explained in the April Order, federal question jurisdiction exists where a plaintiff's claim arises "under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, regardless of the severity of the harm a plaintiff alleges.

Diversity jurisdiction exists where plaintiff and defendants have complete diversity of citizenship *and* the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "Put simply, [complete diversity] means that no plaintiff can be a citizen of the same state as a defendant." *Aurora Loan Servs. LLC v. Sadek*, 809 F. Supp. 2d 235, 239 (S.D.N.Y. 2011) (citations omitted). In other words, even if a plaintiff makes a good-faith demand for damages of $75,000 or more, there will be no diversity jurisdiction under the federal diversity jurisdiction statute if any plaintiff and any defendant are citizens of the same state.

Both the January and May Complaints allege that plaintiffs' apartment is not inhabitable and that its condition has caused them significant injuries. Although these allegations may suggest claims under state or city laws, they do not raise a federal question. Additionally, the January and May

Complaints' references to "[a]nti-discrimination" laws (January Complaint at 4; May Complaint at 4), are insufficient to establish federal question jurisdiction as plaintiffs have not pleaded facts establishing that plaintiffs were discriminated against in violation of any potentially applicable federal law.

Further, neither the January Complaint nor the May Complaint seeks to invoke diversity jurisdiction over potential state law claims. (*See* January Complaint at 4 (leaving unchecked box indicating plaintiffs assert diversity jurisdiction); May Complaint at 4 (same).) Nor does either complaint sufficiently allege facts establishing that complete diversity exists in this action. As plaintiffs neither raise a question of federal law, nor assert facts establishing diversity jurisdiction, the court has no basis for federal subject matter jurisdiction over this action. Under the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Accordingly, this action must be, and is, dismissed.

## CONCLUSION

For the foregoing reasons, this action is dismissed for lack of federal subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). The court certifies

7

pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to enter judgment dismissing this action without prejudice, serve each individual plaintiff with a copy of this Memorandum and Order, the judgment, and an appeals packet at her address of record, note service on the docket, and to close the case.

**SO ORDERED.**

Dated: August 21, 2018
Brooklyn, New York

                                              /s/
                                      Kiyo A. Matsumoto
                                      United States District Judge